FRANKLIN M. PARKER, as Administrator, etc., of ERASTUS PARSONS, Deceased, Respondent, *v.* ARCHELAUS H. PARSONS, Appellant.

*Testimony as to a deed having been placed by the grantee in a box belonging to the grantor, since deceased — incompetent under Code of Civil Procedure, section 829.*

In an action brought by the administrator of a decedent to recover moneys paid upon a contract between the decedent and a third person for the sale of a farm, which moneys had passed into the defendant's possession, the defendant claimed that the decedent had, in his lifetime, executed to him a deed of the premises and that, consequently, the payments made upon the contract of sale belonged to him. For the purpose of establishing this defense he produced a deed purporting to have been executed to him by the decedent, and his wife and his hired man testified to the delivery thereof. It appeared, however, that the deed was found after the decedent's death in a tin box in which the decedent kept his private papers. In order to explain the presence of the deed in the box an attempt was made to prove by the defendant that, after the deed had been delivered to him, he placed it in the decedent's (his father's) private box to which he claimed to have had access.

*Held,* that the testimony was inadmissible under section 829 of the Code of Civil Procedure.

HISCOCK, J., dissented.

APPEAL by the defendant, Archelaus H. Parsons, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Jefferson on the 10th day of October, 1901, upon the verdict of a jury, and also from an order entered in said clerk's office on the 9th day of October, 1901, denying the defendant's motion for a new trial made upon the minutes.

The plaintiff's intestate, Erastus Parsons, died in May, 1899, aged about ninety years, leaving a daughter, Mrs. Phœbe Tuell, and a son, the defendant, Archelaus H. Parsons.

Nine years prior to his death the decedent had entered into a written contract with one George W. Kellogg for the sale of a farm consisting of about 296 acres, situate in the town of Rodman, Jefferson county. Upon this contract Kellogg had made several payments, and among them $130 on the 20th day of June, 1898; $170 on the 24th day of February, 1899, and $350 on the 15th day of September, 1899. The two payments first mentioned were made in the lifetime of Erastus Parsons, and the last one was made to the defendant after his father's death. The first payment was deposited in bank and a certificate of deposit was taken therefor payable to the order of Erastus Parsons " or A. H. Parsons," and for the second, which was also deposited, another certificate was taken, payable to the order of Erastus Parsons alone.

It appears that the defendant received the money upon both of these certificates, Erastus Parsons having indorsed the latter one prior to his death, and the money having been drawn thereon on the 3d day of March, 1900. There is no question whatever but that the defendant also received and retained the $350 paid September 15, 1899, and this action is brought to recover all three of these sums (together with a further sum of $529, represented by a certificate of deposit payable to the order of Erastus Parsons, found among his papers, the consideration of which was withdrawn from the jury), upon the theory that they belonged to the estate of Erastus Parsons, deceased.

The defense interposed is that Erastus Parsons in his lifetime executed to the defendant a deed of the premises in question, and that, consequently, these payments upon the Kellogg contract belonged to him.

Upon the trial a deed was produced bearing date the 5th day of November, 1880, which it will be observed was long before these payments were made and even before the Kellogg contract, dated May 29, 1890, was entered into, which originally ran to the daughter Phœbe Tuell, but her name had been erased and that of the defendant, Archelaus H. Parsons, written underneath the erasure.

The defendant attempted to prove a delivery of this deed to him by his wife, Amelia Parsons, who testified that about five years before his death Erastus Parsons, while living with her and her husband handed the deed to Archie, telling him that he (Erastus) was

getting old and might drop out at any time and that the deed was his (Archie's) and that he wanted him to take care of it.

This evidence it is claimed was to some extent corroborated by Nathan Towle, the defendant's hired man, who testified that on the day of the alleged delivery he and the defendant went out to the barn to hitch up a team and that when they drove up to the door of the house to get their overcoats Erastus Parsons handed the defendant a paper and said, "Here, Archie, here is a deed of the Kellogg farm;" that "Archie took it and looked at it, just unfolded it once, he said: 'All right.'"

After the death of Erastus Parsons it seems that the defendant and his sister, Mrs. Tuell, examined the contents of a tin box or chest in which the father kept his private papers, and in that chest they found this deed purporting to run to the defendant, with the name of Phœbe Tuell erased and his substituted as before stated, and also the two certificates of deposit.

To account for the presence of the deed in the box the defendant's wife testified that after it had been delivered to the defendant in the manner hereinbefore stated, he very carelessly laid it upon the clock shelf and left it there. The defendant was then called in his own behalf and an attempt was made to prove by him that he afterwards placed the deed in his father's box to which he claimed to have had access. This evidence was objected to for the reason that it involved indirectly a transaction between the defendant and his deceased father, and it was thereupon excluded by the trial court. The exception to the exclusion of such evidence raises the only serious question in the case.

*E. C. Emerson,* for the appellant.

*Watson M. Rogers,* for the respondent.

ADAMS, P. J.:

There is a class of cases, of which the one now under consideration is a fair type, in which it is often difficult to determine what is and what is not such a personal transaction or communication with a deceased person as is within the contemplation of the provisions of section 829 of the Code of Civil Procedure.

In the present instance it cannot, of course, be claimed that the

placing of the deed in his father's box by the defendant was literally a transaction or a communication between the father and son, but whether it was within the inhibitory spirit of the section is quite another matter.

The obvious design of the statute, as has been declared by the courts over and over again, is to prevent a living witness who is interested in the event of an action taking advantage of the silence of the grave by attempting to detail a conversation or transaction had with one who cannot be present to contradict him ; and while it is easy to repel any attempted infraction of the rule by direct methods, it often happens, as in the present case, that a party seeks to accomplish by indirection that which would fail of accomplishment if a more direct method were pursued, and in such cases it is necessary to resort to some test in order to determine the competency of the evidence offered. Such a test, and one which we think will solve the problem involved in the present appeal, has been furnished by the Court of Appeals in a comparatively recent case (*Lerche v. Brasher*, 104 N. Y. 157), in which Judge FINCH states the rule to be that if the fact sought to be proven in any manner or to any extent rests for its establishment upon an inference to be drawn from the character of the fact, such evidence would be incompetent. Applying this rule to the case in hand, and what is the result ?

It became important to the defendant to account for the presence of the deed in his father's box and among his father's papers in some manner which would not be inconsistent with his claim of delivery, and, therefore, he offered to testify that he placed it there. The obvious import of such evidence, had it been received, would be to strengthen that of the defendant's wife and hired man and to repel the inference which otherwise might naturally be drawn, that the change in the name of the grantee and the delivery of the deed had not been made by the old gentleman in his lifetime. Indeed the offer could have been made for no other purpose ; for unless the testimony of the defendant did tend to repel such inference and thus indirectly bear upon the question of delivery, it possessed little or no probative force or value ; and this being so its allowance would have been just as much a violation of the spirit of the section as if the defendant had been permitted to testify that his father delivered the deed to him with his name substituted for that of his

sister. And by way of supplement to the foregoing, it may. be said that if Erastus Parsons were living he could doubtless contradict the evidence which the defendant sought to give if the same were untrue; and if so, then this fact of itself furnishes yet another reason for sustaining the rulings of the trial court.

The construction which should properly be given to section 829 of the Code of Civil Procedure constitutes a very interesting chapter in the law of evidence of this State, and while it is not difficult to cite cases which are apparently in conflict with each other upon this subject, yet, when more careful examination is given to them, it will be found that the trend of decisions is in the direction of an observance of the spirit, as well as the letter, of the statute, and that, as was said in a recent decision of the Court of Appeals : " It has been held with general uniformity that the section prohibits not only direct testimony of the survivor that a personal transaction did or did not take place, and what did or did not occur between the parties, but also every attempt by indirection to prove the same thing, as by negativing the doing of a particular thing by any other person than the deceased, or by disconnecting a particular fact from its surroundings and permitting the survivor to testify to what on its face may seem an independent fact, when in truth it had its origin in, or directly resulted from, a personal transaction." (_Clift_ v. _Moses_, 112 N. Y. 426, 435.)

The question of construction has arisen in innumerable cases and in every conceivable form, and from this diversified mass it may not be inappropriate in this connection to select a few decisions which are based upon facts somewhat analogous to those here presented.

Thus, in _Viall_ v. _Leavens_ (39 Hun, 291), which was an action of partition, and in which it became important to prove the delivery of a certain deed, the widow of the ancestor was called and testified in behalf of the parties disputing the delivery of the deed that she had had the custody thereof before and after its acknowledgment and, with the exception of certain specified intervals, down to the time of the trial. It was held that this evidence was incompetent, for the reason that it was an indirect method of testifying to a personal transaction with the deceased.

In _Gregory_ v. _Fichtner_ (14 N. Y. Supp. 891), an action for con-

version, a box containing certain personal property was handed by the plaintiff to a third party, with instructions to deliver the same to the defendant's testator. The box was subsequently delivered in accordance with instructions, the intermediary being ignorant of its contents. In these circumstances it was held that proof by the plaintiff of the specific articles contained in the box was incompetent as it tended to establish delivery and necessarily involved a personal transaction with the deceased.

In *Van Vechten* v. *Van Vechten* (65 Hun, 215) one claiming under a deceased person was not permitted to testify that a note was indorsed prior to the delivery of a deed of certain premises claimed by him, and that such note so indorsed was found by him in decedent's trunk after the latter's death, as these facts tended to prove, inferentially, a delivery to the decedent.

In *O'Connor* v. *Ogdensburg Bank* (51 App. Div. 70), which was an action brought to determine the title to a bank deposit standing in the name of the plaintiff's intestate, the defendant Cardinal, who claimed that the intestate prior to his death gave her a tin box containing the bank book in which the deposit was entered, was held incompetent, under section 829 of the Code of Civil Procedure, to testify that she had seen the bank book produced upon the trial and that it was the only one in the box.

The latest and most authoritative deliverance upon this question, however, is the decision of the Court of Appeals in *Richardson* v. *Emmett* (170 N. Y. 412) wherein it was held that one claiming title to certain railroad stock by gift from a deceased person in his lifetime, could not be permitted to testify, against objection, that for a certain period during the decedent's lifetime and at his residence the certificates of stock were in her possession, where such testimony was material only for the purpose of establishing a delivery of the certificates of the stock to her after they had been issued in her name by the railroad company by direction of the decedent, since such testimony tended to establish such a delivery and to permit an inference as to the nature of the transaction between herself and the decedent, and was, consequently, under the circumstances of the case, evidence of both transaction and communication.

We think we might safely rest our conclusion that the trial jus-

tice committed no error in excluding the evidence offered by the defendant in his own behalf upon this authority, but as the case is a somewhat novel one, in one or two particulars, we have thought it advisable to express our views at greater length than we otherwise would feel justified in doing.

The judgment and order should be affirmed.

SPRING, WILLIAMS and NASH, JJ., concurred; HISCOCK, J., dissented.

Judgment and order affirmed, with costs.