### 1081.　NELSON v. THE STATE.

1. The lethal character of the weapon used in making an assault may be inferred from the effect and nature of the wound inflicted.
2. The intent to kill may be shown by the use of a deadly weapon in a manner likely to produce death.
3. There is some evidence to warrant the verdict, and this court can not interfere.

Indictment for assault with intent to murder, from Fulton superior court—Judge Roan.　February 15, 1908.

Argued March 31,—Decided April 9, 1908.

*Frank L. Haralson,* for plaintiff in error.

*C. D. Hill, solicitor-general,* contra.

HILL, C. J.　Homer Nelson was convicted of an assault with intent to murder.　He made a motion for a new trial on the usual general grounds, and on the following special grounds:　(1) that the evidence does not show that the weapon used in the assault was a weapon likely to produce death; (2) that the evidence does not show that he intended to kill, at the time he made the assault.· The motion was overruled.

The material evidence is substantially as follows:　The person assaulted was a white boy, 16 years of age.　At the time of the assault he was running an elevator in the building of the Atlanta Constitution.　The defendant was employed in the same building, and, according to the testimony of the prosecutor, was drunk and disorderly and quarreling with another boy, and the prosecutor admonished him to quit his disorderly conduct, or he would have to get off the floor; and the defendant·said he would get off when he got "good and ready," and demanded that the prosecutor would take him down in the elevator, and threatened that if this was not done, he would kill him.　The prosecutor testified:　"I said 'I don't hurry for nobody.'　He said, 'You take me down in a hurry, or I will kill you;' and while I had my left hand on the lever and my right hand on the door, and I went to open the door of the shaft, he hit me in the temple with the butt end of his knife.　I hit back at him with my left hand, and he dodged, and turned the knife over and struck me back of the ear."　There was no other witness to the difficulty.　The defendant, in his statement, said, that he got on the elevator, and the prosecutor opened the door for him to get in, and said, "You look like you

didn't like what I said to you a while ago.' I said, 'What did you say?' He says, 'I told you a while ago Tom could whip you.' I said, 'He couldn't do no such thing.' He said, 'You are a God damn liar; don't dispute my word.' He struck me back of the head with a stick. Then he struck me again, and I threw up my arm and said, 'That's all right; I didn't mean no harm;' and he struck me again. About that time I had a piece of zinc which I had been using to raise the glasses out of the lye. I was glass washer. I had it in my hand, and, in trying to keep him from hitting me, I struck him with it. A straw hat I had on he split all to pieces. He stopped hitting me when I struck him. I did not want to hurt the man at all. I just wanted to stop him from hitting me. That was all. I wasn't drunk. I do take a dram sometimes, but I don't drink it around my work." It was the duty of the prosecutor to keep order in the halls of the building. The defendant was several years older than the prosecutor. Immediately after he was cut, the prosecutor ran out of the elevator, and the blood was "spurting out of his ear, and he appeared to be very seriously hurt." A witness who then saw him testified that he did not know whether the boy would live until he could get a doctor, from the way the blood was gushing out of his face.

The physician testified, that the wound was in the prosecutor's ear, and that there had been a hemorrhage from it. "It was a dangerous wound. I should consider the ear a very dangerous place to stick a man with a knife. The instrument that made that wound was a weapon likely to produce death. The knife that made that wound was a weapon likely to produce death, in the place where it was stuck." On cross-examination, the physician testified: "I don't know what kind of weapon produced that wound. I don't know whether it was a pocket-knife or not. I didn't examine the wound, and couldn't tell whether it was a smooth cut or a jagged one."

1, 2. Is the evidence sufficient to prove that the weapon used was one likely to produce death? The indictment charges that the weapon was a knife, and that this knife was a weapon likely to produce death. It is well established that an allegation as to the character of the weapon used must be proved either by direct testimony or by an exhibition of the weapon to the jury (who can then determine the question for themselves), or by evidence as

to the nature of the wound inflicted by the weapon, or other evidence sufficient to warrant the jury in finding that the instrument used was calculated to produce death, when used in the manner in which it was used.  *Paschal* v. *State,* 125 *Ga.* 279 (54 S. E. 172) ; *Mathews* v. *State,* 104 *Ga.* 499 (30 S. E. 727).  The testimony of the prosecutor is positive that the weapon used was of the kind alleged in the indictment.  Was this knife a weapon likely to produce death, when used in the manner in which it was used by the defendant in making the assault?  Of course it can not be said that every knife is a weapon likely to produce death; but it would be a knife of a very unusual kind that would not be likely to produce death, when used to stab a person in the ear. The physician, an expert witness, testified that he considered the ear a very dangerous place to stab a man with a knife.  He further said, that the wound inflicted at this dangerous place was "a dangerous wound," that the instrument that made it was an instrument likely to produce death, and that the knife that made the wound was a weapon likely to produce death when stuck in the place where it was stuck.  It is true, on the cross-examination he testified that he did not know what kind of weapon produced the wound, that he did not know whether it was a pocket-knife or not; but this language must be taken in connection with his testimony on direct examination; and, so construed, it means that in his opinion as an expert, whatever instrument was used, whether a knife or some other instrument, it was a weapon likely to produce death; and he bases his opinion upon the dangerous character of the wound and the place where it was inflicted.  We do not think his statement that he did not examine the wound and could not tell whether it was "a smooth cut or a jagged one" changes materially the effect of his testimony; for a surgeon who cleanses and dresses a wound can form an opinion as to the character of the weapon that inflicted it, and the dangerous character of the wound, even though he does not make a sufficient examination to tell whether the cut was a smooth or a jagged one.  We can not say that the jury was not authorized to find, from the evidence, that the knife used was a weapon likely to produce death.

3.  It was next insisted, that the evidence was not sufficient to show an intent to kill, and that this was necessary, to justify a verdict for assault with intent to murder.  This statement of the

15

law is unquestionably sound; but the intent with which an offense is committed is to be determined by the jury. The testimony of the prosecuting witness is that the defendant stated that he would kill him unless the witness took him down on the elevator. The fact that the defendant first struck the prosecutor with the butt end of the knife, and then turned it around in his hand, and stabbed him with the blade in the ear, it seems, would authorize the inference that his intent was felonious.

It is insisted by counsel for plaintiff in error that the evidence showed a mutual combat, in which neither party was more at fault than the other; but the undisputed evidence is that the party assaulted had no weapon, and the testimony for the State is that the defendant was the aggressor.

We confess that the verdict in this case does not altogether meet our approval. We would have been better satisfied if the verdict had been for stabbing, instead of a felony; but the jury and the learned trial judge occupied a much better position to weigh the evidence and determine the degree of guilt than this court. If there is any injustice in this verdict, it can be and doubtless will be corrected by the able and just judge who will make a final disposition of the case in the sentence.

*Judgment affirmed.  Russell, J., concurs dubitante.*