4572. WIMBERLY *v.* THE STATE.

1. On the trial of an indictment for assault with intent to murder, the
existence or non-existence of the intent to kill is a matter of fact for
determination by the jury, from the evidence, and not the subject of
any legal presumption from a part of the evidence only. It follows that
an instruction to the jury that, "in considering . . the general
proposition as to the guilt of Joe Wimberly of the crime charged in
this indictment, of assault with intent to murder, it is necessary for
you to consider what is murder; because, had the assault eventuated
in the death of Doc Kendrick, and that death had been murder, or the
result of this assault had been murder, then, in case the assault did
not have that result, it would be an assault with intent to commit
murder," was erroneous. And, as the court did not withdraw and
expressly correct this erroneous statement, the error was not cured,
although later in the charge the judge more than once informed the
jury of the necessity for proof of the specific intent alleged. The

giving of a correct and an incorrect instruction upon the same point can only be presumed to confuse the jury, who are required to take the law from the court, without the power of qualifying or harmonizing contradictory statements as to the law involved.

2. The jury is the exclusive arbiter of what is a sufficient "cooling time;" and for this reason the use, in the charge of the court, of the phrase "an appreciable time" is inappropriate and an invasion of the province of the jury.

3. The remaining assignments of error as to the charge of the court are not meritorious. The instruction on the presumption of innocence is approved. As a juror should keep in mind the obligation of his oath and follow the guidance of his conscience, it is not error to call the attention of the jury to their duty in this respect.

(a) The attention of the General Assembly is called to a method by which the grant of new trials, rendered necessary by contradictory instructions, may be obviated.

DECIDED APRIL 2, 1913.

Indictment for assault with intent to murder; from Houston superior court—Judge Mathews. November 23, 1912.

*J. C. Smith, J. E. Hall,* for plaintiff in error.

*John P. Ross, solicitor-general,* contra.

RUSSELL, J. From our view of the evidence in behalf of the State, we are extremely reluctant to set aside the verdict rendered in this case. The jury evidently credited the State's witnesses, and their testimony presents a plain case of attempted assassination. The charge of the trial judge to the jury is, in most respects, a model one. Indeed, in some features, the instructions of the court were more favorable to the accused than he was entitled to have. And still, since the verdict was not demanded, and these instructions were in conflict with other instructions, which are legally incorrect, and of which complaint is made in the assignments of error, our duty and our obligation to the law requires that the case be remanded for another trial.

1. One of the assignments of error is based upon the following charge: "Joe Wimberly is charged in this indictment with an assault to commit murder upon Doc Kendrick. In considering this proposition, the general proposition as to the guilt of Joe Wimberly of the crime charged in this indictment, of assault with intent to murder, it is necessary for you to consider what is murder; because, had the assault eventuated in the death of Doc Kendrick, and that death had been murder, or the result of this assault had been murder, then, in case the assault did not have that result, it would be an assault with intent to commit murder; in other words,

had Kendrick been killed at the time and under the circumstances disclosed under this evidence, and that crime had been murder, then, under the evidence in this case, you would be justified in finding the defendant guilty as charged, of an assault with intent to commit murder."

Under the rulings of this court as well as of the Supreme Court (see *Duncan* v. *State*, 1 *Ga. App.* 118, 58 S. E. 248; *McAllister* v. *State*, 7 *Ga. App.* 541, 67 S. E. 221; *Patterson* v. *State*, 85 *Ga.* 133, 11 S. E. 620, 21 Am. St. R. 152; *Gilbert* v. *State*, 90 *Ga.* 691, 16 S. E. 652; *Gallery* v. *State*, 92 *Ga.* 463, 17 S. E. 863; *Lanier* v. *State*, 106 *Ga.* 368, 32 S. E. 335), it is plain that this instruction is erroneous, and must be held to be so prejudicial as to require the grant of a new trial; that portion of the instruction which imputed to the accused an intent to commit murder not having been expressly withdrawn and specifically corrected. *Atlanta & Birmingham Air-Line Railway* v. *McManus*, 1 *Ga. App.* 306, 307 (58 S. E. 258). Where death results, the law primarily presumes malice on the part of the slayer. The law will charge an evil-doer with all the natural consequences of his unlawful act which that act has produced, but it will not and can not impute to him, by presumption, an intention to produce a consequence which in fact did not result. Where death does not ensue, the intent to kill can not be a matter of legal presumption, but must be discovered from the evidence. And as the intent to kill is an absolutely essential element of the offense of assault with intent to murder, its presence at the time of the alleged assault must be proved, and can not be presumed. One who kills can very well be presumed to have intended to kill, because the law presumes that every one intends the result which would naturally and legitimately ensue from the act committed by him. And for this reason the presumption, in a case of homicide, that the slayer intended to kill, is natural and logical; but it does not follow, in a case in which death does not result, that the assailant intended something which did not happen. It is true that the facts and circumstances attending an assault may clearly demonstrate that there was an intent to kill, but the determination of the intent must depend upon proof of those facts and circumstances, and is a matter of inference from the facts, and not a matter of legal presumption. For this reason, in every trial for the offense of assault with intent to murder, the

jury must be expressly instructed that the burden is upon the State to show, beyond a reasonable doubt, that the alleged assault, if made by the defendant, was made with the specific intent to kill. In the present case it can not be said that the trial judge failed so to instruct the jury. More than once the jury were told that unless they were satisfied that the defendant made the assault with intent to kill the prosecutor, he could not be convicted of assault with intent to murder. And these instructions were couched in language which would perhaps satisfy us that if there was ever a case in which there were contradictory instructions and yet the jury could not have been misled, it is the present case; for the trial judge so stressed the correct instructions (as to the necessity of the jury's being satisfied that the defendant made the assault with the specific intent to kill) that if the jury could make a choice between the conflicting instructions, we would have to assume that they would necessarily infer that the judge did not intend that the instruction of which complaint is made should be considered by them. However, the statement that if they were satisfied that the offense was of such nature that if death had ensued the offense would have been murder, they would be authorized to convict the accused of assault with intent to murder, was not withdrawn or corrected; and therefore, under the rulings of the Supreme Court as well as of this court (see *Savannah, Florida & Western Ry. Co.* v. *Hatcher,* 118 *Ga.* 273, 45 S. E. 239, and cases cited; *Savannah, Florida & Western Ry. Co.* v. *Canty,* ante, 411), the erroneous instruction, not having been withdrawn, must be held to have at least confused the jury and rendered them uncertain as to what the law upon this point really was. "The attention of the jury was not specially called to the fact that it was intended [by the subsequent instruction] to correct what had previously been said. The jury must take the whole charge as the law, and it is not for them to select one part to the exclusion of another, nor to decide whether one part cures or qualifies another, without being instructed so to do by the judge." *Savannah, Florida & Western Ry. Co.* v. *Hatcher,* supra.

2. The court correctly instructed the jury that no indignity offered by Doc Kendrick, or even any assault made by him upon the defendant, Joe Wimberly, at the church, would afford justification for an assault made by Wimberly upon Kendrick, if the

previous difficulty had ended. As a matter of law, one who has been insulted, or even assaulted, has no right to seek an occasion, after the personal encounter has ceased, to avenge either the insult or the assault. But, though the law will not justify an assault made in retaliation of a wrong which has been completed, still, in mercy to the frailty of human nature, the gravity of the offense may be mitigated where the assault can be attributed to an impulse of passion supposed to be uncontrollable, if the jury find that sufficient time had not elapsed for the heat of passion to have cooled. Our law, however, makes the jury the exclusive arbiter of what is sufficient "cooling time" (Penal Code, § 365); and, for this reason, the use of the phrase, "an appreciable time," by the trial judge, was inappropriate and an invasion of the province of the jury. The court could very well have told the jury that an indignity or assault upon a previous occasion would afford no ground of justification whatever to the defendant for the assault made by him (if the jury found he made one); but, in instructing the jury upon the circumstances which might mitigate or reduce the offense, they should have been told that if they found, from the evidence, that the assault was due to such previous provocation as the law will consider in mitigation, they should inquire and determine as to whether the time which had elapsed was a sufficient time for the irresistible impulse of passion to have cooled. It was not for the judge to say whether that time would be an appreciable or an inappreciable time. The defendant's act would be attributable to deliberate revenge if there was an interval, between the assault or provocation given and the assault for which the defendant was indicted, sufficient for the voice of reason and humanity to be heard; but what would be a sufficient time is purely a jury question.

3. The remaining assignments of error are not meritorious. The excerpts from the charge of which complaint is made, when viewed in connection with the charge as a whole, afford the plaintiff in error no cause for complaint. The instructions upon the presumption of innocence and reasonable doubt call for our express approval. In regard to the efforts to define "reasonable doubt," this court has frequently held, and still holds, that any attempt to define two words whose meaning is so obvious is more likely to confuse than enlighten the jury. Any jury qualified to serve as

such may be presumed to know what is meant by reasonable doubt. But as every juror should act under the sanctity of his oath and the guidance of his conscience, it is not inappropriate that the jury's attention be called to their duty in this regard.

The court charged the jury: "A reasonable doubt is what the term implies,—a doubt founded in reason. It must not be a doubt that is a fanciful doubt, or a mere possibility that the defendant may not be guilty, but the question is, after the jury has taken all the evidence and considered it, together with the prisoner's statement, are the minds of the jury settled to the conviction that the defendant is guilty; and is the jury ready to say, upon their oaths and their consciences, that the defendant is guilty? And if they do that, there can not be any reasonable doubt."

The warning which the judge gave the jury against presuming the defendant guilty certainly affords him no ground for complaint. It was really favorable to him, and yet not unfair to the State; because the State does not desire or require the conviction of any one not clearly proved to be guilty. As a matter of law, every prisoner enters upon his trial with the presumption of innocence in his favor; as a matter of fact, it frequently happens that a prisoner charged with a heinous crime enters upon his trial burdened with the presumption of guilt. For this reason, the instruction of the trial judge in the present case (following the statement of the rule "that the prisoner goes upon his trial with the presumption of innocence in his favor"), to the effect that the jury should not presume that the defendant is guilty, until that guilt is proved to the jury according to the principles of criminal law,—which the judge is required to give in charge,—could not have been harmful to the accused. Perhaps the principle would have been more correctly stated if the jury had been told that "the jury are not to presume that the accused is guilty, until his guilt has been proved beyond a reasonable doubt, according to the law as given in charge and under the evidence as the jury find it to he true."

We reverse the judgment refusing a new trial, solely for the reason that the law requires that the jury shall take the law from the court, and that where the instructions from the court upon a specific point are in conflict, the jury is without power to reconcile the conflict, and this court is unable to say that the jury did

not act upon the erroneous instruction, rather than upon that which was correct.

As a means of straightening and shortening the path to substantial justice, it would perhaps be well for the legislature to pass a law which would require counsel to call the attention of the judge, *at the conclusion of his charge,* to any conflicting instructions, and thus enable him then and there to correct the error, by withdrawing and correcting erroneous instructions; and deny the right to assign error upon this ground, unless the judge failed or refused to fully correct the error. However, until some such legislation is had, the courts of review can only enforce the law as it is. *Judgment reversed.*

HILL, C. J., dissenting. On the trial of one charged with the crime of assault with intent to murder, it is abstractly erroneous to instruct the jury to the effect that if the person assaulted had been killed at the time and under the circumstances disclosed by the evidence, and if the killing would have been murder, then the jury would be authorized to find that the accused was guilty of an assault with intent to commit murder. As a general proposition, a murder committed by violence embraces every element of an assault with intent to commit murder, and until the decision of the Supreme Court in *Patterson* v. *State,* 85 *Ga.* 133 (11 S. E. 620, 21 Am. St. R. 152), the trial judges of this State, in cases of assault with intent to commit murder, always gave instructions covering the law of murder, justifiable homicide, and manslaughter, where applicable under the facts, and also instructed the jury that if, in the event that death had resulted from the assault, the killing would have been murder, the jury would be authorized to find the accused guilty of the offense of assault with intent to commit murder. It was never doubted that this instruction was proper, until the decision above referred to. In that decision the principle was first laid down that "the law will impute an intention to kill where there is a killing, but not where there is none." In other words, the specific intent to kill will not be presumed where death does not ensue; and the existence of such intent is a question of fact, to be passed on by the jury. In the case of *Gilbert* v. *State,* 90 *Ga.* 691 (16 S. E. 652), in which Chief Justice Bleckley spoke for the court, that great jurist, with his usual acumen and logical power, further elaborated this prin-

ciple, and the subsequent decisions of the Supreme Court have been uniform on this point. While the rule thus laid down must be conceded to be based upon sound logic, yet it is not entirely free from metaphysical subtlety and nicety of distinction. To the lay mind it seems difficult to understand a substantial distinction between the right to imply as a matter of law the existence of a specific intent to kill, and to infer as a matter of fact the existence of such intent, where, under the evidence, no other construction can be placed upon the facts; and certainly it was never intended that the error of law above indicated would be of sufficient gravity to require the grant of another trial, where, under the evidence, the finding that a specific intent to kill existed was demanded; for under such a state of facts it would seem that the charge, though abstractly erroneous, was, as to the particular case, harmless. We think this statement is clearly inferable from the decision of the Supreme Court in the case of *Adams* v. *State,* 125 *Ga.* 11 (53 S. E. 804). In that case it was held that while "a malicious intent to kill is not, as matter of law, to be presumed whenever one person shoots at another with a gun, unless the shooting be neither in self-defense nor under circumstances of justification," yet, in view of the undisputed facts of that case, the charge of the court on that subject (the same charge, in substance, that we are now considering), "while not correct in the abstract, was not harmful to the accused." In that case the trial judge, after giving the charge complained of, instructed the jury that an intent to kill was not to be presumed, but the burden was upon the State to show the intent to kill, and that if there was no intent to kill, there could be no conviction of assault with intent to murder; and the Supreme Court held that, in view of these instructions, it was evident that the charge complained of could not have been misunderstood by the jury. In *Harris* v. *State,* 120 *Ga.* 170 (47 S. E. 520), the Supreme Court reaffirmed the rule which had its source in the decision in *Patterson* v. *State,* supra, and, in discussing the same error in the charge, said: "It is also to be noted that in a later portion of his charge the court, at the request of counsel for the accused, gave to the jury the correct rule of law, . . . and to that extent the error in the earlier charge will be considered as cured." In the present case, after instructing the jury that "had the assault eventuated in the death of Doc Ken-

drick, and that death had been murder, or the result of this assault had been murder, then, in case the assault did not have that result, it would be assault with intent to commit murder,"—in other words, that if Kendrick (the person assaulted) had been killed at the time and under the circumstances disclosed by the evidence, and the killing had been murder, then the jury would be authorized to find the accused guilty of assault with intent to commit murder,—and after instructing the jury fully on the law of murder, justifiable homicide, and manslaughter, the learned trial judge repeatedly applied to the facts the true rule, that it was for the jury to determine, from the evidence, whether the specific intent to kill existed, and that it could not be implied. In nine separate and distinct parts of the charge he clearly told the jury that they must believe beyond a reasonable doubt, from the evidence, that it was the intention of the accused to kill the person assaulted, when he shot at him, and that they must also find that he was not justified in the shooting, and warned them that they could not find the accused guilty of assault with intent to commit murder unless they found, from the circumstances of the shooting, that it was his intention to kill, and that if they entertained a reasonable doubt as to such intention, it would be their duty to give the accused the benefit of that doubt and acquit. I think that it is unreasonable to hold that there was a possibility that the jury were misled by the abstract error contained in the general proposition first laid down by the judge, when he so repeatedly and forcibly laid down the correct rule on that subject in making a concrete application of the law to the facts. The concrete application of a rule of law to the facts of a case will be more readily understood by the jury, and they will be more certainly controlled by such a statement of the law, than they would be by a mere abstract statement of a general legal principle. For this reason, I believe the error of law contained in the first general proposition stated by the trial judge was clearly and manifestly cured by the repetition of the correct rule of law in its application to the facts of the case on trial, and that the jury could not possibly, assuming that they had ordinary intelligence, have been misled on this point, and that they must have been impressed with the idea, so clearly presented by the repeated charge of the court, that they must look to the evi-

dence and the circumstances, for the purpose of determining the existence of a specific intent to kill.

I agree fully with the statement of the majority of the court that the proper way to correct an error is to explicitly withdraw it from the jury and then give them the true rule; but this applies to errors that are harmful, material errors, errors that are susceptible of misleading and confusing the jury. In the next place, this error was not only cured as above indicated, but, under the evidence, it was entirely harmless. The only conclusion that the jury could have come to, under the facts, was that the accused did entertain a specific intent to kill the person assaulted, when he shot at him. Because of a most trivial altercation with the person assaulted, who was upbraiding him for his cruel treatment of his wife, the sister of the person assaulted, the accused went to the home of the person assaulted, several miles distant, secured his shot-gun, returned, and secreted himself behind some bushes on the side of the road, where he knew his brother-in-law was to pass; and, when the latter came by in a buggy, with a friend, the accused deliberately, without warning, only a few steps distant, arose and shot the prosecutor twice, the first shot putting out both eyes, and the second shot penetrating his shoulder. Here was a deliberate arming for purpose of revenge, the use of a deadly weapon in a manner likely to produce death, shooting at a person, hitting him in a most vital part of his body, shooting not once, but twice, at a distance that would make the aim certain and the result effective and dangerous. The evidence shows no justification for the assault and no mitigation of the offense. In the language of the majority, the testimony "presents a plain case of attempted assassination." The statement of the accused, made to the jury, that he did not shoot intentionally to kill the person assaulted, but shot to "bluff him," because he was "scared of him," could have had but little weight in overcoming the overwhelming proof that he entertained the specific intent to kill. Without extending the discussion of this question any further, I can not get my consent to grant to one who, the facts show, was guilty of an "attempted assassination," a new trial because of an abstract error of law which was not only fully cured, as specifically pointed out, but which could not, under the facts, have misled the jury or been prejudicial to the accused.