45087. RIDER v. THE STATE.

Submitted February 4, 1970—Decided April 17, 1970.

*John N. Crudup,* for appellant.

*Jeff C. Wayne, District Attorney,* for appellee.

Evans, Judge. The evidence shows that the defendant beat his victim about the head and face with a wooden hammer, hitting him on the ear, the cheek, and arm; the hammer was one used "to beat out car tops with." The assault was on August 2, 1969, and on the date of trial, which was on August 28, 1969, the victim was still suffering from the effects of the battery. His eye and his ear were both affected. Several days after the beating there was a big blue place on his ear and elsewhere on his face or nose. The victim testified that when

he was hit, he fell backwards on the bed, but soon got up, and he was hit again on the arm and shoulder. He also testified that the hammer with which he was beaten was an instrument that could likely produce death in the way it was being used, and that it was heavy enough "to knock your brains out"; that a good deal of blood came from his nose, besides it was "skint"; that he was hit hard enough on the eye to "bruise it pretty bad on that bone there." James A. Mason, called as a witness for the State, testified that he saw the victim on August 2, 1969, and observed his condition; that he "had a large black bladder up in the side of his head and one on his arm. It had been a pretty heavy lick, and he was kinda—you know—what I'd call groggy, or you know, wasn't level headed hardly. He couldn't hardly walk it appeared, and due to the fact I went back to see him and due to the fact I put the commitment trial off for a day to let him kind of let him get over what was wrong with him." This witness also testified, after examining the hammer, that in his opinion it was a weapon that could likely produce death.

Sheriff Ridley was called as a witness for the State and testified that he saw the victim on August 2, 1969, and he had visible marks on his face and on his eyes; that they were "blue" with cuts and bruises, and there was swelling of the face, and right along about his eye there was "some knot."

This evidence amply supports a verdict of guilty of assault with intent to murder. There was no burden on the State to show that the intent to kill the victim lasted any specific length of time. His use of a weapon that was likely to produce death, and then striking blows that could have produced death, was sufficient. Simply because he walked away without accomplishing the act is not enough to acquit the defendant because the very nature of the indictment, "Assault with intent to kill" implies that death did not take place; else the defendant would have been indicted for murder, and not for assault with intent to murder. No doubt remorse or fear of punishment affects the wrongdoer many times, and prevents his accomplishing his purpose. The intent is a question for the jury to determine, as has been done in this case, and such intent may be inferred

from the nature of the instrument used in making the assault, the manner of its use, and the nature of the wounds inflicted. *Tanner v. State,* 86 Ga. App. 767 (1) (72 SE2d 549). This court has held that a jury is authorized to find that a hammer is a weapon likely to produce death. *Wheeler v. State,* 65 Ga. App. 810, 811 (16 SE2d 489). The intent to kill may be shown by circumstantial evidence. *Griffin v. State,* 50 Ga. App. 213 (1) (177 SE 511); *Lovett v. State,* 9 Ga. App. 232 (70 SE 989). And the intent is always a matter for the determination of the jury. *Wimberly v. State,* 12 Ga. App. 540 (77 SE 879); *Fulmer v. State,* 74 Ga. App. 298 (4) (39 SE2d 732). "The law presumes malice from the use of a deadly weapon when it is used in a manner likely to produce death, with the intent to kill, and without justification or mitigation." *Kennedy v. State,* 191 Ga. 22 (3) (11 SE2d 179).

In the case at bar there was no evidence of justification but, to the contrary, the defendant testified: "Did you ever strike him with that hammer or with your fist or any other way? A. I ain't never seen that hammer before and I ain't never drawed my fist back at him by no means." The evidence amply supports the verdict of guilty.

*Judgment affirmed. Bell, C. J., Jordan, P. J., Eberhardt and Pannell, JJ., concur. Hall, P. J., Deen, Quillian and Whitman, JJ., dissent.*

DEEN, Judge, dissenting. Intent to kill is not presumed where death does not ensue from the beating. *Hawks v. State,* 51 Ga. App. 317 (180 SE 363). It must be established by evidence sufficient to exclude every reasonable hypothesis save that the injury was caused by specific intent to kill, which may be shown by the reckless and wanton disregard of human life. *Mundy v. State,* 59 Ga. App. 509 (1 SE2d 605); *Messer v. State,* 120 Ga. App. 747 (172 SE2d 194). To show intent sufficient to support conviction one must show both that the weapon was one likely to produce death and that it was used in a manner likely to produce death (*Nelson v. State,* 4 Ga. App. 223 (60 SE 1072)), although the burden may also be carried by proof of other facts and circumstances. *Finch v. State,* 98 Ga. App. 480 (106 SE2d 86); *Monday v. State,* 32 Ga. 672 (79 AD 314).

In this case the defendant wanted to find out from the victim the whereabouts of a shotgun, which he could not have done if he had killed the victim. He came around twice looking for the gun and the victim said he "beat me up a little bit" each time. After the second time the defendant or someone with him said, "Come on, we've done enough to him," and they voluntarily left. The defendant did not require hospitalization or medical treatment and was well in two or three days. It is my opinion that the wooden mallet was not a weapon likely to produce death nor was it used in such a manner and that there is an insufficient showing of specific intent to kill. This opinion is reinforced by evidence that the prosecutor and victim were friends and that there was no quarrel between them other than the defendant's determination to locate a gun which was in the prosecutor's possession. Also, the defendant or his friends had a pistol and could have shot the victim had they wished to kill him. What the defendant did instead was to use the mallet which belonged to the victim and was in the victim's house. In my opinion a proper verdict would have been one finding the defendant guilty of assault and battery, but not assault with intent to murder.

I am authorized to state that Presiding Judge Hall and Judges Quillian and Whitman concur in this dissent.